IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLASSWALL, LLC, a Florida Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ACG FLAT GLASS NORTH AMERICA, ) <br> INC. d/b/a/ AGC GLASS COMPANY ) <br> NORTH AMERICA, a Foreign Corporation, ) <br> and POMA GLASS & SPECIALTY ) <br> WINDOWS, INC., a Foreign Corporation ) <br> registered to do business in Florida, ) <br> ) <br> Defendants. ) <br> ) | M.A. No. 18-333 <br><br> (Pending in the U.S. District Court for the Eastern District of Tennessee (Knoxville) – Case No. 3:17-CV-332-HSM-DCP) |

### DEFENDANTS' MOTION TO ENFORCE THEIR SUBPOENA *DUCES TECUM* ISSUED TO ▮▮▮

Pursuant to Federal Rule of Civil Procedure 45(d), Defendants AGC Flat Glass North America, Inc. and POMA Glass & Specialty Windows, Inc. ("Defendants"), by and through their undersigned counsel, respectfully request this Honorable Court enforce Defendants' subpoena *duces tecum* issued to ▮▮▮ A Delaware Limited Liability Company. In support of their motion, Defendant asserts the following:

### Procedural History and Factual Background

**A. The Underlying Dispute and Discovery Issues**

Glasswall, LLC ("Glasswall" or "Plaintiff") and Defendants entered into a Glass Supply Agreement[1] on or about June 17, 2013. (Ex. A ¶¶ 28 and 29.) Under the Glass Supply Agreement, Plaintiff agreed to pay Defendants $2,393,196.98 for glass that Plaintiff would use to create a

---

[1] All capitalized terms not defined herein shall have the meaning affixed to them in Plaintiff's Complaint in the Tennessee Action. Plaintiff's Complaint is attached hereto as Exhibit A.

1

"curtain wall" system[2] for a general construction contractor called Monadnock Construction, Inc. ("Monadnock"). (*Id.* ¶ 30.)

On March 21, 2017, Plaintiff filed the Complaint against Defendants alleging Breach of Contract (Count I), Fraud in the Inducement (Count II), Fraud in the Performance (Count III), and Breach of the Implied Warranty of Merchantability (Count IV) in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. (*Id.*) The action was subsequently removed, and then transferred to the Eastern District of Tennessee (the "Tennessee Action").

The measure of Plaintiff's damages has been amorphous throughout this litigation. Plaintiff served its initial disclosures on June 23, 2017. (*Glasswall, LLC v. AGC Flat Glass North America, Inc., et al.,* Memorandum Order, October 30, 2018, C.A. No. 3:17-CV-332-HSM-DCP, attached as Exhibit B.) In its disclosures, Plaintiff estimated that its damages may potentially exceed $35,000,000.00. On March 30, 2018, at Defendants' request, Plaintiff amended its initial disclosures, estimating that its damages may exceed $15,000,000.00. (*Id.*). A portion of these damages consist of an approximately $1.5 million arbitration award issued against Plaintiff in its arbitration with Monadnock (the "Arbitration"), for which Plaintiff seeks indemnification.[3]

In July 2018, Plaintiff settled the $1.5 million award with Monadnock in exchange for ▇▇▇ and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Despite clearly settling for ▇▇▇, Plaintiff continued to maintain the position—both informally and in filings with the Tennessee Court—that it was entitled to the *entire $1.5 million* because of the alleged possibility that ▇▇▇▇ would pursue Plaintiff ▇▇▇▇▇. Plaintiff's position forced Defendants to turn their attention to ▇▇▇▇ to determine, among other things, whether ▇▇▇▇ was in

---

[2] A "curtain wall" is the glass envelope or exterior of a high rise building.
[3] Defendants were not parties to the Arbitration, in which Monadnock alleged that Glasswall failed to satisfy its obligations to provide the curtain wall system to the project.

2

fact a legitimate entity that would pursue a ▇▇▇ claim against Plaintiff.

### B. Subpoena Compliance Correspondence

On September 19, 2018, Defendants issued a subpoena to ▇▇▇ requesting certain documents related to Monadnock's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and ▇▇ ▇▇▇ efforts to collect the ▇▇▇ against Plaintiff, which are clearly relevant in the Tennessee Action. (September 19, 2018 Subpoena, attached as Exhibit C.) The subpoena requested that the documents be produced on October 4, 2018, in Tennessee.

On October 1, 2018, counsel for ▇▇▇ wrote a letter to counsel for Defendants informing counsel that ▇▇▇ would not comply with the subpoena because the subpoena exceeded the geographical limits of Federal Rule of Civil Procedure ("F.R.C.P.") 45(c), failed to provide sufficient time to respond under F.R.C.P. 45(d), and requested privileged or protected information. (October 1, 2018 Letter, attached as Exhibit D.)

On October 2, 2018, after a phone call with counsel for ▇▇▇, counsel for Defendants wrote to counsel for ▇▇▇ outlining their conversation and informally requesting the documentation and information requested in Exhibit A to the subpoena. The letter requested that ▇▇▇ provide a date it could produce the documents and the letter asked for an answer as to such date by October 5, 2018. Counsel for Defendants indicated that if the information and documentation was not produced by that time, counsel would reissue the subpoena. (October 2, 2018 Letter, attached as Exhibit E.)

On October 15, 2018, having not received any documents or information from ▇▇ ▇▇▇, Defendants reissued the subpoena for November 8, 2018. The second subpoena required compliance in Wilmington, Delaware—where ▇▇▇ counsel represented the company's principal place of business was—to alleviate counsel's alleged temporal and geographic concerns.

(October 15, 2018 Subpoena, attached as Exhibit F.)

On October 29, 2018, counsel for ▮ wrote to counsel for Defendants informing him that ▮ would not comply with the second subpoena because the requests were overbroad, irrelevant, and requested privileged documents. (October 29, 2018 Letter, attached as Exhibit G.) These objections were noticeably different from those in ▮ October 1 letter, although the requested documents were nearly identical.

On October 30, 2018, counsel for Defendants emailed counsel for ▮ acknowledging receipt of ▮ October 29th letter and requested a meet and confer to discuss ▮ objections. Counsel suggested Friday, November 2, 2018. (Email Chain, attached as Exhibit H.) On October 31, 2018, counsel for ▮ emailed back, "Friday no good for me. Working on a time will get back to you." (*Id.*) Defendants responded the same day and asked for ▮ to then suggest a date and time for a meet and confer. (*Id.*)

On November 6, 2018, after hearing nothing from ▮, counsel for Defendants called counsel for ▮ inquiring as to the status of the deposition and document production. ▮ counsel informed Defendants that ▮ would not submit to a deposition and would produce no documents. Counsel for Defendants followed-up this phone call with an email memorializing the call. (*Id.*)

In an email dated November 6, 2018, ▮ counsel stated that they objected to the deposition and document production because the date and location (at ▮ counsel office) was not agreeable. (*Id.*)

Thereafter, Defendants engaged Delaware counsel to further meet and confer regarding its subpoena requests. Defendants' Delaware counsel spoke with counsel for ▮ by phone on November 12, 2018. During that call, Defendants' counsel arranged to have an in-person meet

and confer meeting with ▓▓▓▓ counsel on November 16, 2018 at 2:00 p.m. to resolve the issues related to the subpoena. On November 15, 2018, ▓▓▓▓ counsel canceled the in-person meet and confer. On November 16, 2018, ▓▓▓▓ counsel represented to Defendants' Delaware counsel that he was informed that the parties to the Tennessee Action had discussed the subpoena, apparently arguing that such discussions excused compliance with the subpoena.[4] It is Defendants' belief that ▓▓▓▓ has no intention of either engaging in any further meet and confer communications or complying with the subpoena.

## Argument

A party served with a subpoena pursuant to Rule 45 is obligated to produce all responsive documents that are within its possession, custody or control.[5] The scope of discovery permitted under the Federal Rules is broad: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ... Information within this scope of discovery need not be admissible in evidence to be discoverable."[6]

Defendants' subpoena complies with the requirements of F.R.C.P. 45 and should be enforced.

### I. Defendants' Subpoena *Duces Tecum* Requests Relevant Documents

Defendants' document and deposition requests are highly relevant to the Tennessee Action. Plaintiff represented to the Tennessee Court and Defendants' counsel that Glasswall was entitled to the full $1.5 million arbitration award, despite the fact it had ▓▓▓▓

---

[4] Later that same day, Plaintiff's counsel supplemented its interrogatory responses in the Tennessee Action to reflect that it was ▓▓▓▓ (Exhibit I.).
[5] *See* F.R.C.P. 45; *Power Integrations Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005).
[6] F.R.C.P. 26(b).

5

███████████████. Plaintiff's position was based upon its assertion that ███████ would possibly pursue Plaintiff for the ███████████████. Upon information and belief, however, ███ ███████ is owned and/or controlled by one or more of Plaintiff's own principals or agents. If determined to be true, this fact would make Plaintiff's position in the Tennessee Action at best, a mistake, and at worst, fraud. Defendants respectfully submit that they are entitled to discovery regarding the credibility and viability of Plaintiff's legal positions in the Tennessee Action, including claimed damages.

One category of documents that Defendants' subpoena requests relates to ███████ formation. (*See* Ex. F, attached Schedule A, Document Requests 1 through 3, 7.) These documents are relevant to understand who owns and controls ███████ and why the assignment was made to ███████ in the first instance.

Another category of documents that Defendants' subpoena requests relates to ███ ███████████████ under the Settlement Agreement and payments that ███████ may or may not have received from Glasswall. (*See* Ex. F, attached Schedule A, Document Requests 4 through 6, 8 through 14.) Certainly, this information and documents are relevant to the underlying dispute because Glasswall's measure of damages has been—for the majority of the litigation in the Tennessee Action—based on amounts Glasswall was forced to pay in relation to the Arbitration. Information and documentation related to payments that ███████ may or may not have received in connection with the Assignment is therefore an integral part of Defendants' defense.

None of ███████ boilerplate objections address any specific requests. For example, ███████ does not identify which document requests are overbroad or which documents are equally accessible from other parties or other sources. Further, with regard to objections based on

6

privilege, ▮▮▮ states that requests for "'any and all documents' and 'communications discussing the formation of' ▮▮▮ and other internal documents and communications involving counsel to ▮▮▮" are privileged and not subject to production. In Defendants' October 2nd email, however, counsel reaffirmed that Defendants were not seeking any attorney-client privileged documents and suggested that ▮▮▮ establish a privilege log pursuant to F.R.C.P. 45(c)(2)(a)(i-ii). ▮▮▮ has produced no privilege log to date, and to Defendants' knowledge, has no intention of doing so without Court order.

The documents requested, and the deposition related to the requested documents are relevant. None of ▮▮▮ objections preclude compliance with Defendant's subpoena *duces tecum*.

## Conclusion

For the reasons set forth herein, Defendants respectfully request that their motion to enforce their subpoena issued to ▮▮▮ to testify at a deposition and produce documents be granted and that ▮▮▮ be compelled to produce responsive documents and appear for a deposition within ten (10) days of the Court's Order.

## D. Del. LR 7.1.1 Certification

The above-signed counsel states that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion, but no agreement was reached.

**[Signature Block on Following Page]**

**COOCH AND TAYLOR, P.A.**

*/s/ Christopher H. Lee*
Christopher H. Lee (#5203)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
(302) 984-3800
clee@coochtaylor.com
*Attorneys for Defendants*

DATE: December 10, 2018